**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | | |
|---|---|---|
| CSA SURGICAL CENTERS-HUNTINGTON BEACH, LLC, a Nevada limited liability company, | ) ) ) ) | |
| Plaintiff(s), | ) ) | 2:06-cv-0160-RLH-LRL |
| vs. | ) ) ) | **O R D E R** (Motion for Summary Judgment–#36) |
| NEIL FRIEDMAN, an individual, JOANN FRIEDMAN, an individual, DOES I through X, inclusive, | ) ) ) ) | (Countermotion for Summary Judgment–#41) |
| Defendant(s). | ) ) | |
| _____ | ) | |
| JOANN FRIEDMAN, | ) ) | |
| Counter-Claimant, | ) ) | |
| vs. | ) ) | |
| CSA SURGICAL CENTERS-HUNTINGTON BEACH, LLC, a Nevada limited liability company, | ) ) ) ) | |
| Counter-Defendant. | ) ) | |
| _____ | ) | |
| JOANN FRIEDMAN, | ) ) | |
| Counter-Claimant, | ) ) | |
| vs. | ) ) | |
| NEIL FRIEDMAN, an individual, | ) ) | |
| Counter-Defendant. | ) ) | |
| _____ | ) | |

1

1    Before the Court is **Jo Ann Friedman's Motion for Summary Judgment, or, in**

2    **the Alternative, Partial Summary Judgment Against Neil Friedman for Indemnity** (#36, filed

3    October 3, 2006).  This was followed by **Neil Friedman's** Opposition to Jo Ann Friedman's Motion

4    . . . and **Countermotion for Summary Judgment on Jo Ann's Indemnity Claims; and, in the**

5    **Alternative, a Request for Additional Discovery Pursuant to Fed. R. Civ. P. 56(f)** (#41,

6    filed–inappropriately as one document–October 30, 2006).

7    Jo Ann Friedman filed her Reply (#42), in support of her motion, on November 13,

8    2006.  She filed her Opposition (#43), to Neil Friedman's motions, on November 17, 2006.  Neil

9    Friedman filed his Reply (#44), in support of his counter-motion, on December 1, 2006.

10   <u>BACKGROUND</u>

11   Neil and Jo Ann Friedman were once married.  Neil is a doctor.  Their marriage was

12   dissolved July 23, 2002, by a stipulated order, but the marital assets remain to be divided.  Friedman

13   Professional Services Co., Inc., was a marital asset which was agreed to be divided with each

14   receiving 50% of the stock.

15   In March 2005, nearly three years after the marital community was legally dissolved,

16   Neil and Jo Ann entered into an agreement with Plaintiff, CSA Surgical Centers-Huntington Beach,

17   LLC ("CSA"), to sell Friedman Professional to CSA for $3,500,000.  CSA has now sued for breach

18   of contract, breach of good faith and fair dealing, intentional misrepresentation, negligent misrepre-

19   sentation, fraud in the inducement, and unjust enrichment.  Jo Ann Friedman removed the case to

20   federal court on the basis of diversity.  Neil Friedman consented to the removal.  Both Defendants

21   filed counter-claims and Jo Ann Friedman filed a cross-claim against Neil Friedman, alleging that

22   she was not involved in the negotiations or representations regarding the sale and any wrongdoing,

23   if there was any, on the part of Neil, and that Neil should indemnify her for her attorneys' fees and

24   any judgment that might be entered against her on behalf of CSA.

25   Jo Ann Friedman now brings this motion for summary judgment on her cross-claim

26   against Neil.  The basis for the motion is that the agreement negotiated with CSA was done

2

1   exclusively by and between Neil and CSA.  She did not participate in the negotiations.  Her only

2   involvement was to sign the agreement.  She further argues that she was merely a "passive" actor

3   and that Neil was the "active" actor in the transaction, therefore he is exclusively responsible for any

4   misrepresentations to CSA.  She cites cases dealing with indemnity in negligence or negligence-per-

5   se cases to argue that there is no cause of action against a "passive" tortfeasor.

6          Jo Ann Friedman admits that she signed the agreement, but contends that she was not

7   even in the facility for several years before the sale and had no knowledge about the condition of the

8   building or the businesses which were operated at the same location ( Post Surgical Recovery

9   Center, Dr. Bagel's Coffee Shop and Deli, and N&F Lab).  Thus, she argues, if there was any breach

10  of contract or tort, Neil was the sole tortfeasor and he alone proximately caused any damages to

11  CSA.

12         Based on the foregoing, she seeks full implied indemnity from Neil as to any liability

13  to CSA, including costs of defense.

14         Neil Friedman's counter-motion is based upon his argument that the claims of CSA

15  arise out of the representations–or claims of misrepresentations–contained in the sale agreement,

16  which agreement Jo Ann signed, and by which she makes the same representations.  Her warranties

17  are the same as Neil's.  She could have refused to sign the agreement if she could not make those

18  warranties.  She had the benefit of counsel during the time the agreement was presented to her.  Her

19  daughter worked there for a period of time.  As a 50% owner, she had the right to (and potentially,

20  therefore, the obligation to) know what was going on with the building and the business.  She has

21  already received her half of the sale, $1,750,000, and if there is a judgment against them and only he

22  has to pay for the judgment, she will have unjustly reaped more than the half  interest in the asset to

23  which she is entitled.  Furthermore, he claims, the issue of indemnity rests on questions of fact and

24  if the Court is thinking of granting Jo Ann's motion he wants more time to do discovery to develop

25  the facts to contest it.

26         None of the motions have merit and all will be denied.

3

1                                    DISCUSSION

2          The primary reason for denying the motions is that there are material fact issues

3   which must be resolved by a fact finder, not by way of summary judgment.  This is not meant to

4   suggest to the parties that they should renew motions for summary judgment after the discovery

5   deadline closes. Nor is it necessary to delay a decision on these motions until more discovery is

6   done.  The discovery will go forward as scheduled.  The factual issues will remain until they are

7   decided at trial.  Neither will the Court attempt to try the case piecemeal by motion.  The Court will

8   try to explain the nature of the various fact questions that exist.

9          First, the issue of passive, versus active, liability is a term generally associated with

10  negligence.  The cases speak of active negligence and passive negligence, issues that arise in tort

11  claims.  Only part of the claims here are tort claims.  Others are contractual claims.  The evidence

12  will determine which, or whether, each of any of these claims are viable.  The Court will not make a

13  declaratory judgment as to whether there should be indemnity as to some claims or damages, as

14  opposed to others, when it does not know which, if any, claims are viable.

15         Second, while Jo Ann Friedman's cross-claim is entitled a claim for indemnity, it

16  speaks in terms of partial indemnity and apportioned liability.  These are terms of contribution, not

17  indemnity.  Indemnity is for full indemnity.  In Nevada, as a rule,  there is no right of contribution

18  between joint tort-feasors.  *Reid v. Royal Insurance Co.*, 390 P.2d 45, 47 (Nev. 1964). "As a general

19  proposition the third-party practice device is *not* available in a case involving joint or concurrent

20  tort-feasors having no legal relation to one another, and each owing a duty of care to the injured

21  party. *Id.*  Both Defendants had a duty of care to not make representations that were false.  There is

22  an exception to this general rule when there is a legal relationship or duty which supports the claim

23  of indemnity, but that legal relationship or duty must preexist the action upon which the underlying

24  claim is based.  *Black & Decker*, 775 P.2d 698, 699-700 (Nev. 1989).  Absent an express contract,

25  there is confusion in the law whether indemnity will even be allowed, and if so, to what extent.

26  *Reid v. Royal Insur-ance*, 390 P.2d at 48.  This Court is of the opinion that the facts will drive the

                                         4

1    answer to this question.

2        "[T]he basis for indemnity is restitution; one person is unjustly enriched when

3    another discharges liability that it should be his responsibility to pay.  The premise is that indemnity

4    should be granted in any situation where, as between the parties themselves, it is just and fair that

5    the indemnitor should bear the entire loss, rather than leaving it on the indemnitee or dividing it

6    proportionally between the parties by contribution." *Piedmont Equipment co., Inc. v. Eberhard*

7    *Manufacturing Co.* 665 P.2d 256, 259 (Nev. 1983).

8        Third, in this case there is no evidence of any contract of indemnity between the

9    Defendants.  Whether a duty arose under the circumstances, depends on precisely what the

10   circumstances were.  There are many factual issues which impact this question. Why did Jo Ann

11   agree to sign an agreement which made certain representations about the condition of the premises

12   or the businesses, if she had no way of knowing whether the representations were accurate?  Is this a

13   negligent misrepresentation?  Why did she not request an indemnity agreement from Neil in return

14   for her signing the document?  Her signature was essential.  Surely she had some bargaining power.

15   Did she have the advice of counsel?  What was the advice?  Did she follow it?  Did she raise the

16   questions with Neil or the attorney?  Did she rely on Neil's representations?  Was it reasonable to

17   rely on Neil's representations?   Although she was not present, did she know what was going on, or

18   did she make any effort to know what was going on, on the premises or in the business which she

19   claimed a 50% interest?  If not, why not?  Did her daughter provide information?  Did she ask her

20   daughter to provide information?  Are her assertions that she had no contact or information during

21   the three years true or not?  These are all questions of fact which go to the tort claims.  Did she ask

22   counsel about the consequences of her signing a document that made certain representations about

23   the condition of the business or the premises?  If so, what was she told?  If not, why not?  Did she

24   have a duty to inquire?

25       Fourth, without a contract of indemnity, only a fact-finder can decide the factual

26   questions of whether the relationship between her and her ex-husband was such that he owed her a

5

1   duty to indemnify her for any breaches of the contract or any tortuous activity.

2           Jo Ann Friedman argues in her moving papers that she had no knowledge of the

3   mold and mildew discovered by CSA's painter.  But there is no evidence that Neil Friedman knew

4   or should have known of it either.  The same is true of the existence of asbestos in various building

5   materials.  She has provided no evidence that Neil knew of the urine and blood hidden under the

6   carpet.  On the other hand, she knew she did not know of the condition of the medical instruments,

7   or the completeness of the list of accounts payable, yet she signed an agreement representing that

8   they were up to date and complete.  Was she negligent and, if so, was her negligence merely

9   passive?  Those are questions of fact for the trier of fact.

10          Fifth, what there is a failure to appreciate is, the fact that had all these things been

11  known at the time of the sale, it likely would have affected the sale price.  Most likely by reducing

12  it.  But by how much?  Jo Ann only has a right to 50% of the asset.  If the asset is not worth what

13  was paid, does she have a right to the overpayment?  Or, does she only have a right to 50% of

14  whatever the asset is worth?  What is that amount?  That is a question of fact.  If she retains more

15  than the value of her 50% interest, is she not unjustly enriched?

16          Sixth, since Jo Ann has no contract for indemnity, she must rely, as she does, on

17  equitable indemnity.  "Equitable indemnity is a judicially-created construct to avoid unjust enrich-

18  ment."  *Medallion Development, Inc. v. Converse Consultants*, 930 P.2d 115, 119 (Nev. 1997).

19  Who would be unjustly enriched here?  Would it be Jo Ann because she allegedly received more

20  than the asset was worth?  Or, would it be Neil, who allegedly is the ultimate cause of the diminu-

21  tion in value?  These are more questions of fact.

22          Nearly all the relevant cases cited by both parties deal with negligence in design,

23  manufacturing, construction or repair, with the issues arising between contractors and subcontrac-

24  tors, manufacturers of different parts of a products, financer/construction managers and developers

25  or builders.  Some address the right to indemnity, but do no speak of passive or active negligence.

26  None of these cases address the availability of indemnity between parties to a contract who allegedly

breach the contract.

Whether it be joint-tort-feasors or joint parties to a contract, the alleged injured party may elect to sue whomever that party wishes. By the same token, if the facts show that justice requires that one of two parties should shoulder the liability for any breaches or torts, that same spirit of justice requires the less, or non-liable party have the opportunity to demonstrate that with evidence. But this Court will not and cannot make that determination as a matter of law. "[T]he question of whether indemnity is available is usually one of fact." *Muth v. Urricelqui*, 60 Cal. Rptr. 166, 170 (Cal. Ct. App. 1976).

IT IS THEREFORE ORDERED that Jo Ann Friedman's Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment Against Neil Friedman for Indemnity (#36) is DENIED.

IT IS FURTHER ORDERED that Neil Friedman's Countermotion for Summary Judgment on Jo Ann's Indemnity Claims; and, in the Alternative, a Request for Additional Discovery Pursuant to Fed. R. Civ. P. 56(f) (#41) are both DENIED.

Dated: December 5, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**

7